Sneed, J.,
delivered tlie opinion of tibe court:
The plaintiff in error appeals from a judgment of the circuit court of Greene county, by which he was committed to jail at the October term, 1877, of said couirt, upon his failure, upon inability shown, to give bond, with security, for his appearance at the next term, as a witness for the state, upon an indictment against one W. F. Maloney, for forgery. The facts agreed on are as follows: An indictment was pending in said court against said Maloney for forgery, which was continued of record, before these proceedings were had; that said John Arrowood had been duly summoned as a witness in said case, before the last preceding term of said court; thait at the said preceding term am attachment was issued against said Arrowood, on the affidavit of the attorney-general, on which said Arrowood was arrested; and on account of his inability to give security lor his appearance, he was committed to jail, where he has remained for eighty-two days, and was still' so confined, until brought into court at the present October term, 1877, when he moved the court to be discharged, 'and to prove and demand his witness fees, for attendance for the whole term of his imprisonment; that pending said motion, the attorney-general moved his recommitment to jail upon *348 affidavit. Tbe affidavit thus submitted was in the words following: “Newton ITacker, attorney-general, etc., makes oatb tbat one Johm Arrowood is a material witness in tbe above case (State v. W. F. Maloney), tbat be bas been, duly and legally summoned; tbat said witness was jointly indicted with said Maloney; tbat be bas been tried and acquitted; tbat tire evidence on tbe trial showed tbat said Maloney forged certain county warrants, and gave them to said Arrowood, and got him to pass them on certain parties in the town of Greeneville, and among others, tbe warrant for tbe forgery of which said Maloney stands indicted. Affiant is informed and believes tbat said witness, after said Maloney was arrested and bound over by tbe magistrate on tbe said charge, fled tbe country, and went to Morristown, and remained there until be was brought back under arrest; tbat said witness bas been brought back, and since bis trial be bas been seen in frequent secret conversation with tbe said Maloney, who is now- on bail. Affiant is informed that said witness, bas said that defendant Maloney desired him to leave tbe country and not testify against him. Affiant is also informed that said Arrowood said, that not long ago be bad a plan laid to take a woman named Kobinson, and leave tbe state with her, and go to Virginia or North Carolina. Tbat defendant Maloney’s father is an influential man, being clerk of tbe county court of Greene county, and is a man of means. Tbat said Arrowood is a man without means, and an intemperate man, and rather weak-minded, and bas nothing particularly to bind him to tbe country. Affiant believes from all these circumstances and others, tbat said witness would leave tbe country to avoid testifying in said case, and thereby doubtless frustrate tbe ends of justice. His testimony is very material for tbe state. Tbe same facts can be proved by no one else. Tbe identity of tbe warrant forged and delivered to him by defendant Maloney, witb tbe warrant exhibited on the trial, can only be proved by tbe said Arrowood. Affiant is further informed tbat said Arro- *349 ■wood has been heretofore held under attachment on. this case; that he gave bond, and owing to his bad,and suspicious conduct, his securities gave Mm up. Affiant is satisfied that -said witness left Greeneville, and went to Morris-town, to keep from being brought before the grand jury against the above defendant, but it so happened that there was evidence outside of what Arrowood knew sufficient to obtain an indictment against Maloney and Arrowood, and said Arrowood was hunted up, and brought back on a capias. The evidence on the trial did not sufficiently show the guilty knowledge of Arrowood, when he passed the warrants, to satisfy the jury of his guilt, and he was acquitted. Affiant asks that an attachment issue directing the sheriff to take the body of th© said John Arrowood, and unless he give good bond in the sum of two hundred and fifty dollars, conditioned that he appear anid testify in the case at th© next term of tMs court, that he be committed to jail and there held until he shall testify.” TMs affidavit was presented on the 10th of October, 1877, and a writ of attachment, instanter, was formally issued and executed., The said Arrowood was 'at once brought to the bar of the court and bond and security demanded, which he announced his inability to give; which fact, of Ms inability to give the bond required, was also satisfactorily shown. The court thereupon overruled his motion to be discharged, and also his motion to be allowed to prove and claim Ms attendance for the aforesaid period of his confinement, and ho was remanded to jail, there to be held in confinement^, to give evidence at the next term in said case. "W"e must hold so much of this judgment as adjudges the party to be committed to prison, as unwarranted and erroneous. Tbe imprisonment of a witness in order to secure Ms testimony is a proceeding to punish a contempt. The contempt must be actually committed before the witness can be committed. The statutes regulating contempts must be very strictly pursued in favor of tbe liberty of the citizen. He can only be disseized of Ms liberty “by the judgment of Ms *350 peers or the law of the land.” There is no actual overt act of contempt disclosed by the affidavit. The liberty of the citizen cannot be taken upon a mere conjectural probability that be will or- may put himself in an attitude of defiance to the process of the court. The circuit judge, in this case, has doubtless proceeded upon a conscientious conviction of public duty, but this court has held the inferior courts have no power to punish as contempts the acts or omissions of parties or persons, other than such acts or omissions as are prescribed by the statutes. 5 Cold., 329. There is ro statute authorizing this proceeding. The court has proceeded, we presume, upon the statute conferring upon committing magistrates the power to imprison witnesses when they fail or refuse to give bond for their appearance to testify in the circuit court. -Code, secs. 5069, 5071 [Shannon’s Code, secs. 7028, 7030]. But the very absence of any positive law authorizing imprisonment by the circuit court, except for overt acts of contempt, is 'tire best evidence that the legislature intended to restrict and circumscribe this extraordinary power to the exact cases provided for, and no others. The court must rely, first, upon its own process, and if that is defied, then resort may be had to the attachment to bring the witness before the court at the time he is required to testify. If he is under bond, the forfeiture thereof may be enforced-under the statute, or if, when brought into court, he stands mute and contumacious, refusing to testify, then there is ample authority to commit him to jail and hold him until he is willing to do so. Code, secs. 3823, 3824 [Shannon’s Code, secs. 5612, 5613.]. Then it is he stands in open contempt, and then it is he may be lawfully imprisoned. We have had occasion to construe the statute (Code 3392) [Shannon’s Code, sec. 5147], that authorizes the imprisonment of the plaintiff in replevin, when he fails or refuses to give a sufficient bond. In that case the bond was originally sufficient, but owing to financial misfortunes of the plaintiff, he was afterward unable, on being required to do so, to give a suffi *351 cient band. Tbe court committed him to jail, and upon appeal, be was discharged by this court. This court held, Ibat if tbe party was unable to give a new bond, under tbe circumstances, it was not tbe purpose of tbe law to íequire impossibilities. Tbe object of tbe law in such cases was to prevent adventurers from getting possession of property by fraud, upon a false and fictitious bond. Tbe court should, in such cases, exercise a sound discretion in ascertaining tire ability of tbe party to comply with its order before resorting to tbe extreme measures of imprisonment. If tbe party be acting in wilful contempt of tbe law and tbe court, be ongbt to be imprisoned. If be be acting in good faitb and be simply unable to obey tbe mandate of tbe court, to imprison in such a case would be extra judicial and arbitrary. Cash v. Quenichett et al., 5 Heis., 737. In the case now before us, it is agreed that it appeared satisfactorily to the court that the witness was unable to give tbe bond. Under such circumstances, he should have been discharged on Ms own personal undertaking to appear. The power of the courts iu this state to punish for contempt is very clearly set forth in the statutes. Among the causes set forth is the wilful disobedience or resistance of any officer of said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said court. Code, sec. 4106 [Shannon’s Code, sec. 5918]. There is nothing iu this case, under the grounds disclosed in the affidavit, that brings it within the purview and meaning of the statute. It is not what the witness may do in the future', but what be has already done, that creates tbe contempt. We must bold that tbe judgment of imprisonment in tbe case was erroneous and unlawful, and the same must be reversed, and tbe prisoner discharged upon his own personal bond or recognizance.